UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

EMERY S.,[1]

                              Plaintiff,              Case # 20-CV-662-FPG

v.                                                   DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.

## INTRODUCTION

Plaintiff Emery S. brings this action pursuant to the Social Security Act seeking review of the final decision of the Commissioner of Social Security that denied his applications for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under Titles II and XVI of the Act. ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g), 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 10, 12. For the reasons that follow, the Commissioner's motion is GRANTED, Plaintiff's motion is DENIED, and the complaint is DISMISSED WITH PREJUDICE.

## BACKGROUND

In January 2017, Plaintiff applied for DIB and SSI with the Social Security Administration ("the SSA"). Tr.[2] 73. He alleged disability since November 2016 due to bipolar disorder, anxiety, ADHD, reading comprehension issues, insomnia, traumatic brain injury, arthritis, lower back

---

[1] Under this District's Standing Order, any non-government party must be referenced solely by first name and last initial.

[2] "Tr." refers to the administrative record in this matter. ECF No. 8.

injury, tremors, and heat stroke. Tr. 72-73. In March 2019, Administrative Law Judge Timothy M. McGuan ("the ALJ") issued a decision finding that Plaintiff is not disabled. Tr. 15-23. In April 2020, the Appeals Council denied Plaintiff's request for review. Tr. 1-4. This action seeks review of the Commissioner's final decision. ECF No. 1.

**LEGAL STANDARD**

**I.   District Court Review**

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (quotation marks omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

**II.   Disability Determination**

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful

work activity. *See* 20 C.F.R. § 404.1520(b).[3] If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. *Id.* § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). *Id.* § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement, *id.* § 404.1509, the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See id.* § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. *Id.* § 404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. *Id.* If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. *Id.* § 404.1520(g). To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (quotation marks omitted); *see also* 20 C.F.R. § 404.1560(c).

---

[3] Because the DIB and SSI regulations mirror each other, the Court only cites the DIB regulations. *See Chico v. Schweiker*, 710 F.2d 947, 948 (2d Cir. 1983).

## DISCUSSION

### I. The ALJ's Decision

The ALJ analyzed Plaintiff's claim for benefits under the process described above. At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since the alleged onset date. Tr. 17. At step two, the ALJ found that Plaintiff has severe impairments of anxiety, panic disorder, bipolar disorder, post-traumatic stress disorder ("PTSD"), and obesity. *Id.* At step three, the ALJ found that Plaintiff's impairments do not meet or medically equal any Listings impairment. Tr. 18.

Next, the ALJ determined that Plaintiff retains the RFC to perform a "full range of work at all exertional levels," except that he could only occasionally interact with the public, could only perform simple, unskilled work, and needed to perform a job where "the work is things-centered." Tr. 20. At step four, the ALJ found that Plaintiff could not perform any past relevant work. Tr. 21. At step five, the ALJ found that there are jobs that exist in significant numbers in the national economy that Plaintiff can perform. Tr. 22-23. The ALJ therefore found that Plaintiff is not disabled. Tr. 23.

### II. Analysis

#### a. Plaintiff's Improvement through Treatment

Plaintiff's central argument is that the ALJ unreasonably found that his mental-health conditions stabilized or improved through treatment, such that he could maintain employment. *See* ECF No. 10-1 at 17-18; *see also* Tr. 21. In Plaintiff's view, the record shows that, despite treatment, Plaintiff continued to require "increases and adjustments to medication" and "continued to suffer from anxiety, hypervigilance, stressors and difficulty with criticism, isolation, and other limiting effects." ECF No. 10-1 at 17. Plaintiff asserts that this erroneous finding infected the

ALJ's whole analysis, including his evaluation of the medical opinions in the record. The Court disagrees.

As noted above, the Court's review of the ALJ's factual findings is highly deferential. *See Bonet ex rel. T.B. v. Colvin*, 523 F. App'x 58, 59 (2d Cir. 2013) (summary order). So long as they are supported by substantial evidence, the ALJ's factual findings "must be given conclusive effect." *Genier v. Astrue*, 606 F.3d 46, 49 (2d Cir. 2010). This is so "[e]ven where the administrative record may also adequately support contrary findings on particular issues." *Id.* In other words, the Court is not concerned with whether substantial evidence supports Plaintiff's position; the Court must decide whether substantial evidence supports the ALJ's decision. *Bonet*, 523 F. App'x at 59.

In this case, the ALJ could reasonably find that Plaintiff's mental health conditions improved and stabilized through treatment and medication. Plaintiff has a medical history of, among other things, bipolar disorder, anxiety, depression, and insomnia. Tr. 259. Notwithstanding those impairments, Plaintiff successfully maintained employment as a truss assembler in Colorado until late 2016, when he moved to New York. Tr. 243, 294. Plaintiff testified that, once he moved, "something drastically changed" that caused his mental-health conditions to worsen. Tr. 36. He alleged that he suffered from three-to-four anxiety attacks per week, Tr. 38, had significant difficulties with attention and concentration, Tr. 40, and had problems sleeping. Tr. 44. He stated that he could not work because he would suffer from anxiety attacks if he were unable to "understand something" or if he were to get into a confrontation with a customer. Tr. 33, 35, 39. In December 2016, Plaintiff visited Buffalo General Hospital complaining of worsening anxiety, insomnia, irritableness, and agitation. Tr. 243, 248. Soon thereafter, he began receiving treatment through Spectrum Human Services.

The ALJ accepted Plaintiff's claim that he initially exhibited some increased deficits at this time—attention and concentration difficulties, insomnia, and anxiety—but he found that they were largely ameliorated through his treatment. *See* Tr. 19, 21. This is a reasonable inference from the record.

In Spring and Summer 2017, medications for Plaintiff's insomnia and for his "ADHD symptomology with anxiety" appeared to be working. Plaintiff reported sleeping well and improvements in attention and anxiety. *See, e.g.*, Tr. 286, 429, 431, 433. This is consistent with the April 2017 opinion of consultative examiner Susan Santarpia, Ph.D. *See* Tr. 294-98. She reviewed Plaintiff's medical history and performed an examination, observing that Plaintiff had adequate social skills, coherent thought processes, euthymic mood, and intact attention and concentration. Tr. 295-96. Dr. Santarpia concluded that Plaintiff could perform simple and complex tasks, make work-related decisions, interact adequately with others, sustain concentration, regulate emotions and control behavior, and maintain well-being. Tr. 296-97.

Thus, as the ALJ found, these records suggest that treatment helped Plaintiff to largely return to the position he was in before his deterioration in late 2016/early 2017—*i.e.*, able to work in competitive employment. *See* Tr. 21 (noting that Plaintiff was previously able to "maintain employment" even "while participating in no treatment whatsoever" and that Plaintiff's "impairments stabilize[d] while on medication").

To be sure, subsequent records show that Plaintiff's medication regimen needed to be adjusted over time. From Fall 2017 to early 2018, Plaintiff began reporting more problems falling asleep. Even during that period, however, Plaintiff reported only "some" anxiety and irritability, and his mental status examinations consistently showed that he had coherent thoughts, good

attention and concentration, intact memory, and good insight and judgment. Tr. 421, 423, 425, 427.

In April 2018, Plaintiff reported more issues with sleep, along with increased anxiety and irritability—though his mental status examination remained consistent with previous exams. Tr. 419. Plaintiff's medications were adjusted. *Id.* The next month, Plaintiff reported that he had stopped his ADHD medication "altogether" and that he was unable to tolerate his sleep medication. Tr. 417. Although he was only getting "3-5 hours of sleep per night," he reported less anxiety than his last visit, and his mental status examination remained consistent. *Id.*

In May 2018, Plaintiff was "discharged" from "individual counseling and medication management" to an "integrated treatment" program so that he could join an "anger management group." Tr. 384. In August 2018, he reported that he had nightmares and lost track of time, and that "[c]onfrontation by others triggers anxiety, rage and 'black[] out[s].'" Tr. 798. New medications were prescribed. Tr. 800. A few months later, Plaintiff reported improvement, with reductions in "racing thoughts" and "perseveration/rumination behaviors," as well as "improved sleep." Tr. 790. In December 2018, it was noted that Plaintiff "appear[ed] to be managing mood wise fairly well on current medications" and was "able to stay asleep for 6-8 hours." Tr. 805.

Based on the latter treatment notes, the ALJ concluded that the medication changes were successful, as Plaintiff's mood was "stable on medication," he was able to sleep "for six to eight hours per night," and his mental examination was generally "normal." Tr. 20-21. This is a reasonable inference from these treatment notes and from Plaintiff's own reports at those visits. *See* Tr. 790, 805. Overall, these treatment notes could reasonably be read to show that, while it took some time to find the right combinations, Plaintiff ultimately "stabilize[d] while on medication" to the extent that he largely regained his pre-move ability to work. Tr. 21. The ALJ

7

nonetheless recognized that Plaintiff continued to have some mental-health difficulties, and he accommodated those difficulties with additional non-exertional restrictions. Tr. 20, 21.

Plaintiff responds that the proper inference to draw from his treatment notes is that he suffered from "[c]ycles of improvement and debilitating symptoms" which would still interfere with his ability to work. ECF No. 10-1 at 23. He also marshals other evidence to suggest that he did "not improve or stabilize" through treatment. *Id.* Among other things, Plaintiff cites the evidence that he was placed into integrated treatment for anger management, had multiple suicide attempts in his history, had been hospitalized for psychiatric issues in the past, and continued to have risk factors for suicide, substance use disorder, and depression during treatment. *Id.* at 17-18.

The mere fact that evidence exists to support Plaintiff's position is not enough to justify relief. *See Youngs v. Comm'r of Soc. Sec.*, No. 18-CV-119, 2019 WL 3083045, at *3 (W.D.N.Y. July 15, 2019) ("[T]he Court is not concerned with whether substantial evidence supports [the claimant's] position; rather, the Court must decide whether substantial evidence supports the ALJ's decision."). At most, Plaintiff's evidence reveals a factual conflict in the record—the extent of Plaintiff's improvement with treatment—and it is a conflict "the ALJ was entitled to resolve." *Lynette W. v. Comm'r of Soc. Sec.*, No. 19-CV-1168, 2021 WL 868625, at *4 (W.D.N.Y. Mar. 9, 2021). The ALJ reasonably relied on the above-cited evidence to resolve that conflict against Plaintiff.

Having rejected Plaintiff's assertion that the ALJ erroneously found he had improved with treatment, the Court can quickly dispose of Plaintiff's subsidiary arguments premised on that assertion.

First, Plaintiff claims that the ALJ erroneously relied on Dr. Santarpia's opinion, arguing that it was "stale" insofar as Plaintiff's condition degraded after April 2017. ECF No. 10-1 at 17. "The mere passage of time does not necessarily render a medical opinion outdated or stale; however, subsequent treatment notes indicating a claimant's condition has deteriorated may." *Morales v. Comm'r of Soc. Sec.*, No. 17-CV-341, 2019 WL 1109572, at *6 (W.D.N.Y. Mar. 11, 2019). Because the ALJ reasonably found that Plaintiff's condition had not deteriorated, Dr. Santarpia's opinion was not rendered stale by the passage of time. *Accord Oliver v. Comm'r of Soc. Sec.*, No. 19-CV-443, 2020 WL 3073342, at *5 (W.D.N.Y. June 10, 2020). Thus, the ALJ could rely on the opinion. *See Biro v. Comm'r of Soc. Sec.*, 335 F. Supp. 3d 464, 470 (W.D.N.Y. 2018) ("A more dated opinion may constitute substantial evidence if it is consistent with the record as a whole notwithstanding its age.").

Second, the Court rejects Plaintiff's argument that the ALJ failed to give the appropriate weight to the opinion of treating nurse practitioner David Pfaltzer. ECF No. 10-1 at 19-20. Pfaltzer opined that, *inter alia*, Plaintiff was seriously limited in his ability to understand very short and simple instructions, maintain attention for two-hour segments, and accept instructions from supervisors, and was wholly unable to meet competitive standards for sustaining ordinary work routines and maintaining regular attendance. Tr. 819. Given Plaintiff's prior ability to work and his improvement on medication, however, the ALJ reasonably found Pfaltzer's opinion inconsistent with the record as a whole.[4] *See Carney v. Berryhill*, No. 16-CV-269, 2017 WL

---

[4] Plaintiff also appears to criticize the ALJ for failing to "properly explain[]" why each and every limitation Pfaltzer identified was rejected. ECF No. 10-1 at 20. The Court does not find that a basis for remand, as it can adequately glean the ALJ's rationale for rejecting Pfaltzer's opinion. "Where, as here, the evidence of record permits the Court to glean the rationale of an ALJ's decision, any lack of clarity in the ALJ's decision is harmless so long as the RFC assessment is supported by substantial evidence." *Steven H. v. Comm'r of Soc. Sec.*, No. 20-CV-404, 2021 WL 1893476, at *3 (W.D.N.Y. May 11, 2021) (internal quotation marks and brackets omitted).

2021529, at *4 (W.D.N.Y. May 12, 2017) ("[A]n ALJ is entitled to discount a medical opinion that is inconsistent with the record as a whole." (citing 20 C.F.R. § 404.1527(c)(4))).

Third, Plaintiff contends that the ALJ's assessment of his credibility was erroneous and conclusory. ECF No. 10-1 at 22-24. The ALJ could reasonably reject Plaintiff's contentions regarding the extent and severity of his symptoms in light of Plaintiff's prior ability to work and his findings concerning Plaintiff's improvement. *See Dennis R. v. Comm'r of Soc. Sec.*, No. 19-CV-938, 2020 WL 7319228, at *11 (W.D.N.Y. Dec. 11, 2020) ("Because the ALJ found Plaintiff's complaints inconsistent with the record as a whole, he was not required to incorporate all of those alleged limitations in the RFC."); *Schoeps v. Comm'r of Soc. Sec.*, No. 17-CV-989, 2019 WL 1284267, at *5 (W.D.N.Y. Mar. 20, 2019) ("[T]he ALJ can consider claimant's work history as one of many factors to weigh the credibility of the claimant's allegations as to the severity of impairments.").

Fourth, Plaintiff argues that the ALJ failed to properly discuss the combined effect of Plaintiff's mental-health conditions with his non-severe impairments of hypertension, heat intolerance, degenerative disc disease, and diabetes mellitus. ECF No. 10-1 at 26. It is true that an ALJ must consider non-severe impairments when determining a claimant's RFC. *See Zochios v. Berryhill*, No. 17-CV-6207, 2018 WL 1835451, at *4 (W.D.N.Y. Apr. 18, 2019). While it is not fully explicit in this respect, the Court can adequately glean from the ALJ's decision that the ALJ found that those impairments did not add or contribute to any additional restrictions. *See* Tr. 18 (discussing physical impairments). This rationale is reasonable: until November 2016, and despite his impairments, Plaintiff was indisputably able to work at a job involving physical labor and lifting/carrying up to forty pounds at a time. Tr. 53. At a consultative examination with Hongbiao Liu, M.D., Plaintiff reported that he could lift sixty pounds and walk five miles. Tr.

10

304.  And by his and his attorney's own admissions, it was his mental-health, not physical, impairments that prevented him from working once he moved to New York.  *See* Tr. 33 (testimony of Plaintiff) (stating that he could not work because his "anxiety levels shoot right out the roof"); Tr. 34 (testimony of Plaintiff's attorney) (clarifying that Plaintiff "alleged a lot of things" that were "non-severe issues" but that "[t]he mental health will be the main impairment we're going to focus on").  Because the ALJ reasonably found that Plaintiff's mental health improved through treatment, he could reasonably find that Plaintiff thereby returned to a state in which he was physically and mentally able to work.[5]

In sum, the ALJ reasonably found that Plaintiff's mental-health conditions improved through treatment, and therefore the Court rejects all of Plaintiff's arguments premised on the contrary position.[6]

### b. Duty to Develop Record

At the hearing, Plaintiff's counsel noted that, while Spectrum Human Services had sent "a lot" of records related to Plaintiff's mental health treatment, individual counseling notes were not tendered.  Tr. 31.  Plaintiff argues that, consistent with his duty to develop the record, the ALJ should have sought out these additional mental health counseling records.  ECF No. 10-1 at 21.

The Court disagrees.  The ALJ has an affirmative duty to develop the administrative record due to the "essentially non-adversarial nature of a benefits proceeding."  *Pratts v. Chater*, 94 F.3d

---

[5] For similar reasons, the ALJ could reasonably reject Dr. Liu's opinion that Plaintiff was mildly limited in "prolonged walking, bending, kneeling, and overhead reaching."  Tr. 307; *see also* Tr. 18, 21.

[6] Plaintiff also appears to challenge the ALJ's finding that Plaintiff was limited to occasional interactions with the public.  *See* ECF No. 13 at 4.  He argues that his inability to "handle criticism" was "not limited to the public" but extended to "supervisors [and] co-workers."  *Id.*  The ALJ reasonably found to the contrary, however.  Plaintiff specifically testified that confrontations *with customers and the public* triggered his anxiety, and that he did not have issues with supervisors or "people in authority."  Tr. 39.  The ALJ could reasonably construct the limitation in light of Plaintiff's own testimony, which was corroborated by his self-report that he had never "lost a job because of problems getting along with people."  Tr. 197; *see also* Tr. 19.

34, 37 (2d Cir. 1996). Specifically, the ALJ must develop a claimant's "complete medical history" for at least the 12 months preceding the month in which the claimant filed his application unless it is necessary to develop an earlier period. 20 C.F.R. § 404.1512(b). The ALJ must make every reasonable effort to help the claimant get reports from his medical sources. Remand is warranted if the ALJ fails to fulfill his duty to develop the record. *Pratts*, 94 F.3d at 39. On the other hand, where there are no "obvious gaps" in the record and a "complete medical history" exists, the ALJ is "not obligated to seek additional evidence. *Rosa v. Callahan*, 168 F.3d 72, 79 n.5 (2d Cir. 1999).

In this case, there were no obvious gaps in the record regarding Plaintiff's mental-health treatment. As Plaintiff's counsel conceded at the hearing, Spectrum provided "a lot." Tr. 31. The ALJ had before him hundreds of pages of records detailing Plaintiff's longitudinal treatment history at Spectrum, which included not only records about Plaintiff's medications but about Plaintiff's counseling. Furthermore, the record includes Plaintiff's hearing testimony, in which he details his subjective complaints during this period, and two medical opinions that provide further insight regarding Plaintiff's conditions. Under these circumstances, "where the record evidence [was] sufficient for the ALJ to make a disability determination," the ALJ was "not obligated to seek additional medical records." *Kham v. Comm'r of Soc. Sec.*, No. 18-CV-790, 2020 WL 947926, at *3 (W.D.N.Y. Feb. 27, 2020).

## CONCLUSION

For all of the reasons stated, the Commissioner's Motion for Judgment on the Pleadings (ECF No. 12) is GRANTED and Plaintiff's Motion for Judgment on the Pleadings (ECF No. 10) is DENIED. The complaint is DISMISSED WITH PREJUDICE, and the Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: June 24, 2021
      Rochester, New York

_____
HON. FRANK P. GERACI, JR.
Chief Judge
United States District Court